The counsel for Colmesnil. filed, the following petition for a re-hearing.

In regard to the suggestions made by Honore’s counsel, I would remark, that it by no means appears, that his “contribution of capital, to the partnership stock, greatly exceeds that of Colmesnil.”
The amount of the proceeds of the cargo of the barge Dispatch, is not ascertained, the amount paid by Colmesnil and by the firm, on account of that cargo, is large, and it may well be doubted, whether Honore’s stock, after it shall he ascertained in the manner db rected by the opinion, will exceed §500.0,
Petition for a re-hearing.
The stock of Colmesnil will amount, at least, to that sum, when ascertained as directed by the opinion; indeed, the record exhibits proof to authorize the assertion, that Colmesnil did contribute at least $5000. But how are the profits to be divided? If the parties have stipulated on that subject, their stipulation must govern; if not, the profits should be equally divided, or the losses equally borne; the áuthorities cited in the brief and referred to by the court, fully maintain this position.
The bill distinctly states, that the profits were to he equally divided; the answer admits it, and the discrepancy between them, with respect to the capital, consists in this, that Honoré alleges they were each to advance the whole of their monied capital, and Colmesnil contended that the capital was to be equal; both concurring in the statement that each was to participate equally in profits and losses.
The rule of law laid down in the opinion, seems not to be seriously contested, but an attempt is made, to show that there are facts and circumstances in this case, which render that rule inapplicable.
These facts and circumstances do not exist, and the difference, in favor of Honoré, in amount of capital, is altogether imaginary.
According to Honore’s own statement of the terms, Colmesnil was to contribute “all his monied capital;” he did contribute largely, and there'is po proof, or circumstance from which it can be inferred, that he did not put in the whole of his monied capital.
The amended bills of Honoré, and sworn to by him, would show that Colmesnil’s means, when the co-partnership was formed, were very limited, and he has labored most excessively to sustain that allegation by proof.
No other than an equal distribution of the profits can be directed, if regard is to be paid, either to the agreement of the parties, or to the well settled principles of law, if such agreement did not exist.
It is also suggested by the counsel of Honoré, that ■ all advances made by either partner, after the 12th of *535 April, 1817, (the commencement of the co-parirlership,).should not be considered as stock, but should be placed to his credit irt an account current.
Petition for a re-hearing.-
This would be so obviously unjust, that I scarcely conceive it necessary to respond. Ifis not presumable that the whole capital could be immediately employed 5 if, therefore, the co-partners made advahees as the business of the firm required them, and in a reasonable time after the co-partnership was formed, the purposes of the firm were as well answered as if the money had been paid at its commencement. It must have been upon-the supposition that the advances made by Colmesnil, subsequent to the 12th April, 1817, constituted no part of his stock, that the counsel for Honoré .have assumed the fact of the great difference in favor of Honoré, in capital advanced.
It is suggested that the court has not designated th.e period when the settlement between the parties took place, in respect to the .concern of the barge Mary. The period alluded .to by the court, was doubtless, when the balance of $283 49, was found due to Colmesnil. I would respectfully suggest, that the propeí period to be fixed by the court, would be the winter of 1819-20, at which period, the accounts were re-examined and settled by Tyler and Stewart, at the request of the parties.
I do not believe it can be necessary for me to respond to the charges, that the accounts of my client are “barefacedly false,” that “he put false dates to his debits,” &c. It will be sufficient to say that there 'is not a syllable of proof to support the charge, and it must have been based upon the bare assumption of an adversary, whose conduct in this business deserves any thing, rather than commendation.
The allowance made to Honoré, for store and warehouse rent, is exorbitant, according to the proof in the cause; yet as the object of my client is to terminate this controversy, I hope the court will consider that point as at rest.
The allowance to Colmesnil of $577, for pork, is so obviously correct, that I will not add any thing on that point, to the suggestions already made to the court-in the brief.-
Pefilioo for a re-baaring.
By the opinion of the court, the claim of Honoré, for pretended applications of company funds to private purposes, by Colmesnil, is put to rest; it is suggested by Honore’s counsel, that the claim should be left open, i trust not. I would invite the court to the strictest scrutiny of the testimony on this point, and if my client is at all culpable, hold him to the most rigid account; if, on the contrary, the claim is groundless, false and fabricated, as I believe it to be, let it remain as it is, rejected.
The counsel for Honoré are mistaken when they say, “the court does not intend to preclude Honoré from proving, before commissioners, any sums of money, or any profit realized by Colmesnil, by brokerage or exchange.” If the intention of the court is to be ascertained by what they have said, or by what would be right, had they said nothing on the subject, then this point, as the last one noticed, has been properly put to rest.
The parties were fully prepared on these points,and no reason is assigned and now appears, why they should be left open for further proof. It is desirable that there should be an end of. the controversy, and.that the duties of the circuit court and its commissioner, after the return of the cause, should be simplified as much as possible, and not that the whole subject should be • left at large¡
With respect to the ‡2000 of Commonwealth paper, received by Honoré, I would say, that the disposition directed by the opinion, comports with equity and justice, and is far preferable to the mode pointed out by the counsel of Honoré. Should the facts turn out as the counsel suppose, Honoré will not be prejudiced, because the circuit court will direct that he shall receive his proportion of Commonwealth’s paper, in kind, and he will have the benefit of its appreciation.
rí he only remaining point to be noticed, is the objection to ah allowance to Colmesnil, for his services, as agent, in wi.ridi.ng up the concern. The reasons given in.-the opinioft. For this allowance, are so satisfactory, that it is-needaess to say more.
: Xhe reasons urged against it, are based upon mistake ;•* Honoré was not “turned out of his own ware-
^hearingf &
bouse and commission business,” Colmesnil eÓrmnenced business in another house, and Hon'ore continued business in the house which had been occupied by the firm. No profit resulted to Colmesnil from the use of the company funds; so soon as the funds accumulated, Honoré received his proportion; on the contrary, the court must perceive that Colmesnil will sustain a heavy loss in consequence of this agency. For it is settled by the opinion, that his receipts of depreciated paper, must be accounted for by him, as specie.
In addition, it may be remarked, that the responsibility imposed on him, was immense; for want of diligence, by mistake-, or from other causes, he might and probably has, rendered himself liable to-make good; losses which have occurred-, and it would be a violation of every principle of justice, equity or morality, to say that he should not be compensated.
Having briefly noticed the suggestions for a modification of the opinion, I would now most respectfully ask the court to reconsider so much of the opinion as "settles the cargo of the barge Despatch, to be the sole . roperty of Honoré.
If I did not firmly believe that the cargo of tha*" barge was joint property, and that the facts and cir” cumstances of the case clearly demonstrate it so to be, I would forbear to trouble the court in a re-examination of the question. But, believing as I do, that it was the property of the firm, a sense of duty constrains me to present, in a hasty and brief manner, the proofs in support of that opinion.
I do not pretend to controvert that the cargo was purchased in New-Orleans, by Honoré, and upon his own account; it was procured from G. Musson, and from others, upon his credit.
íhe second amended bill filed by Honoré, on oath; states that he had been concerned with Colmesnil for two years, prior to the commencement of nership, in running the barges Mary aj¡ this statement does not consist with hiá sole owner of both barge and cargo.
The court misapprehended the counsl nil, when they supposed that “his clair *538 owner of the cargo of the barge Despatch,” was rested “uPon a,n agreement between the parties, that the partnership, when formed, should relate back to the of the voyage of the barge.” His c^H'm 1° he joint owner, was pressed on other grounds, anf] (.¡-,e circumstance that if the barge and cargo had been lost on the return voyage, that the loss would have fallen oil Honoré alone, does not, at all militate against Ms claim to be joint owner.- if Honoré was originally to be owner, and after the arrival of the barge at Shippingport, he had sold the cargo or any part of it, with equal propriety might it be said, that the purchaser acquired no title, because,-if the boat had been lost before the sale, such loss would have fallen on Honoré.
^thtId"tif0r a re- ean g.
It Was contended by Colmesnil’s counsel, and is now •confidently re-asserted, that the proof of his joint ownership of that cargo, was entirely satisfactory, if not conclusive.
Upon what principle of honesty or fair dealing, ean the fact of Honore’s accepting the draft of Musson, for $1447, after the commencement of the partnership, drawn in part payment of the cargo of the barge, and accepting it, as he did, in the name of the firm, be reconciled with his claim, to be the exclusive owner?
If the.cargo was his sole property, what right had be to accept'a draft, drawn upon himself only, in the name of the firm, and to pay that draft with company funds, without even charging himself to the company, With the account? Yet this was done, and it is proof of a strong character, to show that the cargo was company property», and had become so by agreement of the parties, upon the formation of the co-partnership.
Another fact of a conclusive character was relied on; Musson transferred the balance due him, by Honoré, for the cost of the cargo, to the debit of the firm, at a time when Honoré was in New Orleans; and the presumption is strong, therefore, that it was done by Honore’s directions. Musson had left the United States, it was impossible-'to take his deposition, to prove ■Honore’s directions; and the deposition of a clerk in the house, was taken to prove that the transfer was made without any directions; the deposition does not disprove the fact of Honore’s directing the transfer.' *539 but when it is considered, that the account current of Musson, was rendered years before the dissolution of the co-partnership; that the account shewed the transfer, and that Honoré, all that time, did not correct the mistake, if it was one; did not object and offer to have the mistake corrected; did not, as he should have done, charge himself to the firm, with the amount of the firm’s assumpsit, to Musson, it would seem impossible, longer to doubt, as to whom the cargo belonged.
^\1eá""n„?ra 3
Another fact was relied on, which is entitled to great weight; a short time previous to the dissolution of the co-partnership, Honoré, when called on by the arbitrators, to state the amount of capital paid in by him, declared that it amounted only to from 6 to $8000. If this statement was true, it was impossible that he was the sole owner of the cargo of the barge, which cost more than $8000 originally.
If Colmesnil was not joint owner of the cargo, why was he not credited, by Honoré, in private account, with the $,1120 63, which he paid on the draft of M. White & Co. in favor of M’Cbnnell, which draft was drawn in part payment of the cargo?
If Honoré was sole owner, why did he not open an account of sales of the cargo, upon the books of the firm? He was familiar, at that period, with the books, frequently examined and scrutinized them, and knew that no such account had been opened, and, therefore, that it would be impossible, ever to ascertain the proceeds of the sales. -It cannot be pretended, that he would have permitted the sales to have been made in this way, and the proceeds to be devoted to company uses, without any account being kept, or his receiving any credit therefor.
If Honoré was sole owner, it is a fact that he always was apprised of, yet, we find, that in his original bill, he set up no such claim; nor in his first, or second amended bills, though his second amended bill, was filed on the 23d May, 1820, three days after the auditor’s report was returned, and near three months after the answer to the original bill had. been filed, accompanied by Colmesnil’s exhibit of the stock account, made up exclusively of items growing out of the pur *540 chase, disbursements and cargo of the barge Despatch; and his third amended bill, in which this claim is just introduced, was not filed until 18 months after tlie institution of the suit.
Petition for a re-hearing.
Response of the court, by judge Under, \voo,d-
But can it be possible that this claim is just? When the auditors first met, they required the parties to submit their claims in writing; Honoré submitted bis, and amongst them, is no claim to the exclusive ownership of this barge and cargo. On the contrary, he claims $700, being half the cost of the barge, and this claim is under date of September, 1816; he claims $739 11, being half the amount of bill, for 35 crates of ware, (part of the cargo) under date 8th November, 1.816; he claims also $2000, being half of $4000 paid Musson, through Fishli, on account of the cargo. What was the answer to these claims? To the first, that he had been credited in stock account, with $1400, the whole price of the barge; to the second, that be had been credited by $1478 22, the whole cost of the crates of ware, and to the third, that he had been credited with the $4000.
Had he been ignorant before, of Colmesnil’s just claim to one moiety of the cargo, could he have remained so a moment after? It would seem impossible. Yet, in his second amended bill, filed subsequently, we find no claim set up by him. It seems to be impossible to reconcile these facts, with the idea, that Honoré was the exclusive owner of the cargo, of the barge Despatch, A variety of other circumstances might be referred to, entirely inconsistent with Hon-ore’s claim; it is hoped, however, that those already pointed out, will be found sufficient to authorize the court to grant a re-hearing on this point.
The response of the court, delivered by Judge Underwood, July 3d, 1829.
We have considered the suggestions made by the counsel for both parties, and only deem it proper to make a few remarks, by way of explanation, for the purpose of rendering the original opinion the more certain, and less liable to misinterpretation. The claim asserted by Honoré, fpr interest, on the excess of his stock, brought forward for in the petition oi his. counsel, i$ ppt allowed, It is uncertain what the *541 amount of such excess will be, if any thing; although it is probable, that there is a considerable excess in his favour, there is no time fixed, from which the calculation of interest should commence. If Colmesnil did not contribute his proper portion of capital, at the time when, by the contract of co-partnership, lie should have furnished it, Honoré might have called on him to explain the cause of his default; and if forbearance and indulgence, was therefore granted, a stipulation for interest or an equivalent, might have been made. No such thing appears tobavebeen done. No complaint, pending the existence of the .firm was made on the subject. It does not appear, that any amount of capital was ever agreed on. Nor was any stipulation made, in regard to the failure of either partner, to furnish his proportion. Nordoes it appear that Honoré might not have withdrawn any excess of capital, furnished by him at any time. We cannot as^ certain the period at which the whole capital of each partner, was to be invested. There is a cloud of uncertainty, hanging over the transactions of the parties, which conceals from our view, the true nature of the contract, actually made by them; and therefore, we have not the data, upon which to direct the allowance of interest on Honore’s capital, or any part of it in a manner satisfactory, if we were disposed to do it. There may be cases, where the terms of the partnership, are so well ascertained, that a defaulting partner, might with certainty and propriety be charged with interest, or be compelled to pay his co-partner damages, for a failure to comply, with his partnership engagement. But this is not a case of that kind, and we shall withhold an application of the doctrines contended for, until a proper case is presented.
—-—^ ■ ^oonrt.V judge Underwood,
It was intended by the court, to preclude all investigation, upon the return of the cause, as to profits made by Colmesnil, in the exchange and brockerage business. It does not appear, that he and Honoré were ever partners in a business of that sort. So far as Colmesnil has admitted, that he applied the funds of the- firm, to making profit in that way, for the use and benefit of the firm, it would not be improper to regard it as sanctioned by Honoré, so as to give him a share of the profits, Cplmesnil states, that his profit was *542 accounted for, and paid over to the firm. There is no that he withheld any, nor is there any proof, how much money of the firm he used in that business. If it can be shown, that Colmesnil withdrew funds of ^he ^rm’ ^or ^le PurPose °f dealing in exchange, or for aay other purpose, and has not accounted for the funds so withdrawn, by charging himself with their amount, or in some other way, it would be proper yet, to charge him with the funds so withdrawn, and in relation to such a withdrawal of funds, the commissioners may hear, and ought to hear evidence, should any be offered. The original opinion did uot intend to shut the door against such evidence, but it was intended to close it against an investigation's to the profits made by the exchange and brockerage business, because it seemed to us, that it was foreign to the purposes of the partnership, and would result in an useless consumption of time; nothing appeared on the subject, so far as the cause has progressed, which would enable us to decide any thing in regard to it, and as nothing had been made to appear, we were not disposed to multiply points for future attention, upon a possibility that something might be shown, that' would operate beneficially to Honoré. Neither ought Colmesnil to be permitted to reclaim any profits for exchange or brockerage, paid over to the firm. We can readily see that there may be a propriety in connecting the dray age business with a commission warehouse, and in this case, the accounts for drayage ought to be considered, Profits on exchange are very different, and so far as they have not already been accounted for, by Colmesnil, we shall not hold him to an account. If he had purchased a lottery ticket with the funds of the firm, in bis name, and drawn a large prize, he would be accountable for the money thus appropriated, but not for the avails of the ticket. If Colmesnil has, by withdrawing and diminishing the "stock of the firm, and applying it to his own use, thereby diminished the profit of the firm, in its business and course of trade; it is an injury to his partner, for which he ought to account, and if it shall appear that he has withdrawn from the firm, more than he was entitled to, so as to diminish the capital stock, it would be proper to compensate Honoré, for an injury thus imposed.
toconrt lív judge Underr wood,
Response of the court, by judge Underwood.
The date of the check, given by Honoré to Colmeshil, to-wit: December 18, 1815, is the time, beyond which, the parties should not be permitted to go, in bringing foward accounts against each other. It is at that date, we presume, a settlement was made between the parties, and which ought not now to be molested. The commissioners allowed a balance, which appeared on Honore’s book, in favor of Colroesnil, subsequent to that date, and which was brought into, and mude a part of the sum of $1,491 35, allowed by them to Colmesnil. We' have sanctioned that balance, for reasons, satisfactory to us, and which would be useless to detail.
We have not deemed it necessary, to notice any other suggestion, as we shall permit the original opinion, td remain with this explanation.